Cynthia ASHLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 0382–83.

Court of Criminal Appeals of Texas,
En Banc.

July 13, 1983.

Shannon E. Salyer, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Paul Raleigh and Jeffery A. Babcock, Asst. Dist. Attys., Corpus Christi, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

COURT'S REFUSAL TO GRANT
APPELLANT'S PETITION FOR
DISCRETIONARY REVIEW

TEAGUE, Judge, dissenting and concurring.

The facts of this case show that Cynthia Ashley, appellant, who is by profession a cook but by the facts before us qualifies as a modern day unsuccessful "Bonnie without Clyde," was convicted of robbing an employee of a Circle K Food Store in Corpus Christi at approximately 9:30 o'clock p.m. on December 16, 1981. Appellant drove to the store in her female roommate's Pinto stationwagon. The roommate is not implicated in any of the crimes appellant has committed.

When appellant committed the robbery, she was armed with a loaded magnum pistol, which also belonged to her roommate. Joseph Wambaugh, through several books, has made a loaded .357 magnum pistol famous. A police officer testified in this cause that a loaded .357 pistol can be "a pretty deadly weapon."

Appellant was positively identified by all witnesses as the person who committed the robbery. The jury rejected appellant's de-fense of "blackout," found her guilty and assessed her punishment at 25 years' confinement in the penitentiary.

The record also reflects or indicates that on the evening in question appellant committed two other robberies and planned to rob the manager of the restaurant where she had been employed. The jury was not made aware of these events. Appellant has been tried on one of the two robberies, convicted, and assessed a 5 year sentence in the penitentiary. That conviction is presently on appeal.

Today, I shall visit with the exception mentioned in *Ayala v. State,* 633 S.W.2d 526 (Tex.Cr.App.1982). First, however, I must state that appellate counsel, in his dealings with appellant, appears at all times to have been above board and honest with her concerning the chances of success on appeal. He has at all times been conscientious and able counsel. I do not believe he has ever given appellant any false hopes. But, in light of *Ayala v. State,* Id., there is one thing he did which I believe is the reason the petition for discretionary review was filed in this cause. In a letter dated February 1, 1983, counsel advised appellant of the following: "If the Court of Appeals affirms your conviction, *we* can then apply for a writ of certiori [sic] to the Court of Criminal Appeals in Austin, Texas. After this is denied or your conviction is affirmed by the Court of Criminal Appeals in Austin, *you* can begin with your writ of habeas corpus remedy." [Emphasis Added].

On April 7, 1983, the Corpus Christi Court of Appeals, in a per curiam opinion by Justice Gonzales, agreed with appellate counsel that the appeal is frivolous. I totally agree with that conclusion. Appellate counsel has informed appellant of the decision of the Court of Appeals. She has requested appellate counsel "to file again," and "keep this case going."

In *Ayala,* this Court expressly held that an indigent defendant, such as appellant, has no right to "demand" that court ap-

pointed counsel file a petition for discretionary review, and counsel has no duty to file it. However, in *Ayala,* this Court also stated the following: "If an appointed counsel deprived the client of his right to apply, pro se, for discretionary review—by volunteering to make a timely application for discretionary review and failing to do so, for example—then there might be a due process violation . . ."

I believe counsel has read this passage from *Ayala.* I also believe that he remembered making the above statement in the letter he had sent appellant. Realizing he had committed a legal faux pas, he undertook a course of action to avoid depriving appellant of her due process and due course of law rights, as well as avoiding a possible complaint being filed with the local grievance committee, had he not filed the petition. By this Court's decision of *Ayala v. State,* had counsel not made the statement in the letter he wrote appellant, he would have had no obligation to do anything after the Court of Appeals affirmed appellant's conviction. He did not even have to notify her of that court's decision.

However, appellate counsel, pursuant to appellant's request, and in light of *Ayala v. State,* supra, which he acknowledges, presented to the trial judge a motion to appoint him "to represent her on her continued appeal to the Court of Criminal Appeals in Austin, Texas." The trial judge accommodated appellant's counsel by signing an order appointing counsel "to represent CYNTHIA ASHLEY and perfect her appeal to the Texas Court of Criminal Appeals in Austin, Texas."

Thereafter, counsel prepared and filed the petition for discretionary review that is before this Court. Counsel, in his petition, prays that "this Court carefully review the Appellant's record from the Trial Court and to reverse her conviction upon any reversible ground found therein." The petition does not comply with the rules of this Court. The District Attorney, in his response, has suggested that appellant's counsel's request is nothing more than a request for the members of this Court "to engage in a general witch hunt for error." After carefully reading the entire record of appeal, I have concluded that not even the citizens of Salem could find "witch" error, much less reversible error, in the record of appeal.

I will not repeat what I stated in my concurring and dissenting opinion in *Ayala,* supra. I believe that if a defendant with means can hire retained counsel to file a frivolous petition for discretionary review, then surely an indigent person has that same right. Whether court appointed counsel must file a petition should not depend upon whether counsel has or has not made an unnecessary statement in a letter to the court appointed client.

*Ayala v. State,* supra, has no place in our jurisprudence. It promotes discrimination of the rankest sort. It also may cause disharmony to occur between court appointed counsel and his client. Had appellate counsel in this cause not prepared and filed the petition for discretionary review, he would have subjected himself to disciplinary action by the local grievance committee. *Ayala* is an impediment to that goal we should try to achieve: that every defendant shall at all stages of the proceeding be treated equally. *Ayala,* however, represents implicit approval by this Court that there shall be in our criminal appellate system a difference between the rich and the poor. Judge Clinton stated the following in the concurring opinion he filed in *Ayala:* "The majority opinion is fraught with very high potential for much low mischief." Had appellate counsel not filed the petition for discretionary review, I believe he would have encountered one of those high potential mischiefs. I also believe that counsel will soon learn from the official who controls the purse strings of Nueces County that he has indeed performed a valuable and needed public service—for which he will receive no compensation.

But what is wrong with requiring court appointed counsel to further pursue the appeal by filing a motion for rehearing with the court of appeals and, if overruled, filing

a petition for discretionary review with this Court, even when the petition is frivolous? A rich man, whose appeal is frivolous, certainly will retain counsel to file such a petition. Why do we penalize the poor defendant?

Members of this Court have on a regular basis witnessed indigent inmates, some who appear to be almost illiterate, who have been abandoned by counsel at the level of the courts of appeals, filing with this Court pro se petitions for discretionary review. And interestingly, some have been granted; not because the defendant is an indigent, or because of his native legal ability, but because this Court has given such petitions a liberal reading, as it must under the law, and at least four members of this Court believed that the petition had legal merit. Some rather interesting questions not yet answered are the following: Where a pro se petition has been granted, who is to make the oral argument for the defendant? Who is to write a supplemental brief? Who is to be that person's advocate? Who will file a motion for rehearing if the decision of the court of appeals is affirmed?

But there is no need for the members of this Court to be troubled with such questions. Indigent defendants should not be required to prepare and file pro se petitions for discretionary review. If, because of their indigency, they have been appointed counsel on appeal, and they desire counsel to prepare and file a petition for discretionary review, counsel should be obligated to perform that function, and be reasonably compensated therefor. Such decision should not hinge on the fact that counsel has or has not made a statement in a letter to his client.

*Ayala* should be overruled. To the failure of the majority to overrule *Ayala,* I dissent. To the result it reaches in refusing appellant's petition for discretionary review, I concur.